# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF LINCOLN,

## 1849.

MEM.—Several cases of 1849, in this county, were published in the last volume.

### SIMON HANDLY *versus* MOSES CALL.

Where the plaintiff was allowed to read to the jury, an attested copy of a registered deed, "provided he should in the course of the trial, file an affidavit of the loss of the original," and the case proceeded and was submitted to the jury, without any objection that the condition had not been performed, it may well be considered that the affidavit, if not filed, was waived.

If, in such a case, there was an omission to file the affidavit, and the omission does not appear to have occasioned any injury to the defendant, it cannot be considered a sufficient cause for disturbing the verdict.

The declarations of a party, made in conversation with a third person, and not appearing to be a part of any business transaction, cannot be introduced by him as testimony in his own favor.

If one procure an attachment upon real estate to be ante-dated, so that it falsely appears of record that it was prior to a conveyance made by the owner to a third person, and such third person not knowing that the attachment was ante-dated, and for the purpose of dislodging it, pays the creditor the amount which the attachment purported to secure, he may recover back the same in an action at law, although the money was paid to the defendant by the hand of his debtor, without any disclosure that he was paying it as the agent of the plaintiff.

VOL. XVII.                    2

In such an action, it is no defence that the defendant, in receiving the money from his debtor, intended no fraud upon the plaintiff or any other person; or, that he was ignorant that the *plaintiff* had furnished the money; or, that the money was paid before there was any certainty that the plaintiff would be injured by the attachment; or that the land never had been seized upon execution, and the plaintiff had never been disturbed.

Where a former verdict was set aside because the principal witness, in the opinion of the Court, was entitled to little or no credit; and on another trial a similar verdict was returned, and there is no proof of any improper prejudice, bias, or passion with the jury, the Court cannot interfere to enforce its own opinion respecting the testimony and the facts, and the verdict cannot be set aside as against the weight of evidence.

It is incorrect for a person, drawn as a juror, and who was also summoned as a witness for the party prevailing, to receive his fees as a witness, for any part of the time he was sitting as a juror to try the cause. Yet, if it do not appear that either the party prevailing or the juror *knew* it to be incorrect, and if there be no evidence of corrupt intention, it is not sufficient cause for setting aside the verdict.

A new trial, to permit newly discovered testimony to be introduced, should only be granted, where such testimony is not cumulative, and where there is reason to believe that, if it had been before the jury, the verdict would have been different.

THIS case is upon exceptions and upon two motions for a new trial. The facts on which the plaintiff relied, were stated by his counsel to be in substance as follows, viz. : — That the plaintiff purchased several lots of land, in payment of debts, of one Harrington, who was in failing circumstances, and caused the deeds, to be immediately recorded ; that Harrington, at the same time, was largely indebted to the defendant ; that two days after said conveyances, the defendant made a writ upon his demand against Harrington, and dated the same back to the day prior to said conveyances, and procured one Joel How, Jr. a deputy sheriff, to indorse upon the writ a return, under the same date with the date of the writ, that he had attached said land thereon ; and also to make return of said attachment within five days from said date, to the registry office ; that the defendant entered the action in Court, and the same was continued ; that pending said continuance, the plaintiff, not knowing the writ and the return thereon to have been ante-dated, and in order to relieve the land from said attachment, paid to the defendant the amount of the debt due

to him from Harrington ; and that the suit was brought to recover back the money so paid.

To prove that the writ and its return were ante-dated, the plaintiff relied upon the evidence of How, who testified to those facts, and that he ante-dated his return at the request of the defendant. The cross-examination tended heavily to impair the credibility of How. His own previous statements, made on oath and otherwise, with several important circumstances proved in the case, tended strongly to the same result. And many witnesses offered testimony to impeach his character for veracity.

It was proved that the money, which the officer received, was paid by Harrington, his debtor, without any intimation that it was his own money.

The action had been tried once before, and the verdict, which was for the plaintiff, had been set aside on the ground more especially that the evidence of How, a *particeps fraudis*, testifying that he had violated his official oath as a deputy sheriff, was entitled to little credit.

All the other material facts are shown in the opinion of the Court.

The counsel for the defendant requested the Court, TENNEY, J. presiding, to instruct the jury : —

1. That if Call received payment of his honest debt from Harrington, his debtor, without any intention to defraud the plaintiff or any other person, this action cannot be maintained.

2. That if Call received payment of his honest debt from Harrington, his debtor, in ignorance of Handly's having assisted Harrington in raising the funds with which to do it, Handly cannot maintain this action.

3. That if Harrington procured Glidden and Handly, or Handly alone, to assist him in raising the means to pay Call, Harrington became thereby responsible to them or him. And that, without satisfactory evidence that he has not in some way secured or paid them or either of them, or that he is unable to pay them, this action cannot be sustained.

The Judge instructed the jury, that to entitle the plaintiff to recover, he must satisfy them that the defendant fraudulently procured the return to be ante-dated, so that the attachment should purport to be so early as to precede the time when the deeds from Harrington to the plaintiff should take effect as against the defendant; and that the money or means were obtained by the plaintiff and on his credit, and paid to the defendant, in order to free the land from the attachment. If Harrington paid the money to the defendant by means which he had obtained, in his own behalf, or on his own credit, the plaintiff could not recover; if he obtained the money on note or notes independent of the plaintiff and without his agency, the plaintiff could not recover; or if Harrington obtained the plaintiff's name upon paper, from which the money was procured, upon his own credit, Harrington being liable to the plaintiff, if the latter should take up the paper, and he did take it up after its maturity, the plaintiff could not recover. But if Harrington acted as the agent of the plaintiff in obtaining the paper and the money thereon, and as such paid the money to the defendant, the plaintiff could recover the amount of the money so paid to the defendant, with a further sum for the detention, which the jury would be authorized to consider the interest, if otherwise entitled; and the ignorance of the defendant of the manner in which the money was obtained, and the absence of any fraudulent or wrong intention on his part *at the time* of his receiving the money, would not prevent the plaintiff's recovery.

The jury found a verdict for plaintiff for the sum of $1139. The defendant excepted to said rulings and instructions.

*Ruggles*, for the defendant.

*M. H. Smith*, for the plaintiff.

SHEPLEY, C. J. — The first question presented by the exceptions is, whether copies of the record of two deeds from William P. Harrington to the plaintiff, were improperly admitted as evidence. After testimony had been introduced to

prove the loss of the deeds, the copies were admitted "provided plaintiff should file an affidavit of their loss, which was not done."

The deeds had been in the office of Messrs. Hussey & Coffin, whose partnership was dissolved in the month of April, 1843. Mr. Hussey states in his testimony, that he does not know, whether Mr. Coffin took them or not; that he had no knowledge, that any person took them from the office, which, with all the papers in it, was burned on May 1, 1845. Mr. Coffin states, that they remained in Hussey & Coffin's office until their partnership was dissolved; that he thinks he did not take them; that, if he took them, they must have been burned when his office was burned, at the same time that Mr. Hussey's was. This testimony would afford conclusive proof of their loss, unless they were obtained by the plaintiff from one of those offices. The fact, that they were executed on the evening of the day of their date, does not appear to have been seriously contested. There was full proof, that they were. Knowing that the condition upon which the copies were admitted, had not been performed, the counsel for the defendant appear to have proceeded to present the case to the jury without calling the attention of the Court to that omission. The Court might justly infer, that the affidavit had been made and exhibited to the counsel, that it was not considered to be of any importance. The Court did not err in admitting the copies subject to that condition. There was therefore, strictly speaking, no erroneous ruling. It was the duty of the plaintiff to have made his proof perfect. The omission to do so not appearing to have been the occasion of any injury to the defendant, cannot be considered as sufficient cause for disturbing the verdict.

Complaint is made, that the declarations of the defendant, made to Harrington on the morning after his failure, were improperly excluded.

The conversation between them does not appear to have been a part of any business transaction, and it could not be admitted as a part of any *res gestae.* The declarations of a

party, made in the course of conversation with others, cannot be introduced by him as testimony in his own favor.

Complaint is also made of the refusal to instruct as requested, and of the instructions given.

The position insisted upon in the first request, is in substance, that if the defendant, when he received payment from Harrington, of a debt justly due, did not commit any fraud upon the plaintiff in receiving such payment, the action cannot be maintained.

The alleged cause of action was not, that the defendant defrauded the plaintiff by receiving payment of a debt justly due to him from Harrington, but that having such a debt he caused a return of an attachment of land, conveyed by Harrington to the plaintiff, to be entered on a writ founded on such debt before those conveyances were made, when in fact the attachment was made subsequent to the conveyances.

The wrong and injury consisted in causing the land to become subject to, and to be incumbered by that attachment, by which the plaintiff was injured. If the instructions first requested had been given, the plaintiff might have proved the whole facts alleged, as the cause of action, without being entitled to a verdict in his favor. This requested instruction was properly refused.

The second request for instruction rests upon the position, that if the defendant received payment, " in ignorance of Handly's having assisted Harrington in raising the funds with which to do it," the action cannot be maintained.

That the ignorance of the defendant of the fact, the plaintiff procured the funds or assisted Harrington to procure them to pay the debt, can alone constitute no defence, will be apparent, when it is considered, that consistently with such ignorance, it might have been true, that the defendant wrongfully caused the land to become subject to the attachment, and that the plaintiff was obliged to pay the debt to relieve it from that incumbrance, and that he procured the money and caused it to be paid by Harrington acting as his agent.

The matter contained in the third request for instructions,

so far as it was suited to present the rights of the parties correctly, was embraced in the instructions which were given. Those instructions required the jury to find "that the money or means were obtained by the plaintiff or on his credit, and paid to the defendant in order to free the land from the attachment," and that they were not obtained by Harrington or upon his credit. "But if Harrington acted as the agent of the plaintiff in obtaining the paper and money thereon, and as such paid the money to the defendant, the plaintiff could recover the amount of the money so paid to the defendant with a further sum for the detention."

The alleged wrongful act being first proved, the plaintiff was entitled to recover for the amount of damages which he had suffered by it. And if he was by law entitled to pay the debt for the purpose of relieving his land from that attachment, without waiting to ascertain whether the defendant ever would obtain judgment against Harrington, and whether, if he did, he would cause a levy to be made upon the land conveyed, the defendant can have no just cause to complain of the instructions given.

The debt was admitted to have been justly due from Harrington to the defendant. Harrington at the time when it was paid, was insolvent. If the plaintiff would have been entitled to maintain an action on the covenants contained in his deed from Harrington, to recover from him the amount paid to discharge that attachment, and could not obtain satisfaction from him on account of his insolvency, he would suffer the loss of that amount when paid, by reason of the false date of the attachment. But the counsel for the defendant insists, that the plaintiff was not entitled to interpose and to pay the debt to discharge the attachment before there was any certainty, that he would ever be injured by it. He says, " there was no seizure ; Handley was not disturbed ; many contingencies intervened between him and harm. Injury to him was remote, contingent, uncertain."

The existence of an inchoate right to dower is a breach of a covenant against incumbrances contained in a conveyance of

the land, and yet it is quite uncertain whether the grantee will ever be injured by it. *Porter* v. *Noyes*, 2 Greenl. 27; *Jones* v. *Gardner*, 10 Johns. 266; *Shearer* v. *Ranger*, 22 Pick. 447.

A judgment creating a lien upon land conveyed is an incumbrance, and the grantee may satisfy it before the lien has been enforced, and recover the amount of his grantor by virtue of the covenant against incumbrances. *Hall* v. *Dean*, 13 Johns. 105.

In the case of *Shearer* v. *Ranger*, the opinion says, "it has been argued, that an attachment is not an incumbrance within the meaning of the covenant against incumbrances; and the case of *Barnard* v. *Fisher*, 7 Mass. 71, is relied on as establishing this principle." That case is then explained as not authorizing such a conclusion; and it is said, that the proper course for a second attaching creditor is to continue his action until the suit, on which the prior attachment was made, is concluded. "And that would be the proper course to pursue, if an action were brought for the breach of a covenant against an incumbrance by an attachment of the estate before conveyance."

If any doubt was thereby occasioned, that the grantee might pay the debt to discharge the incumbrance created by an attachment, and maintain an action founded on that covenant, to recover the amount of his grantor, it was dispelled and the question put at rest by the case of *Norton* v. *Babcock*, 2 Metc. 510.

The defendant does not therefore appear to have been aggrieved by the rulings, instructions, or refusals to instruct.

It is further insisted, that the verdict should be set aside, because it was found against the weight of evidence.

A verdict obtained by the plaintiff at a former trial was set aside on the ground more especially, that the principal witness for the plaintiff, he being the officer and a *particeps fraudis*, and testifying that he had violated his official oath, was entitled to little credit. The case has been presented to another jury. The doubt entertained by the Court respecting the credibility of that testimony was well known. Increased efforts

have been made, and additional testimony has been introduced by each party. Another jury has come to the same conclusion. The opinion of the Court cannot be substituted for that of the jury. It is its duty to set aside verdicts and to grant new trials when necessary, that parties may have a decision upon the facts by a jury, which does not act under any improper prejudice, bias, or influence. Without proof arising out of the evidence or otherwise presented, that a jury has thus acted, the Court cannot interfere to cause its own opinion respecting the facts and testimony to be enforced. From the testimony now presented, the Court does not find itself authorized to conclude that the jury must have acted under the influence of passion, bias, or prejudice, and it cannot therefore set aside their verdict as found against the weight of evidence.

A motion has been made to have the verdict set aside on account of alleged misconduct of the plaintiff and of one of the jurors.

The plaintiff cannot be prejudiced by what Joel Howe, Jr., or any other person said respecting that juror without authority from him. The facts presented by legal testimony appear in substance to have been, that the juror was regularly summoned as a witness for the plaintiff after he had been drawn as a juror. It does not appear, that the plaintiff then knew, that he had been drawn as a juror, although he did know it on his first attendance at court. When the jurors were empannelled, this juror was not placed upon either jury, but he remained in attendance as a juror. When this cause was about to be taken up for trial he was called on to the jury. A statement was then openly made, that he had been summoned as a witness for the plaintiff to testify respecting the character for truth of a witness for the defendant. The juror asked to be excused, and stated that he knew nothing about the case. He had before had a conversation with the plaintiff, and asked him to excuse him from attending as a witness, but the plaintiff would not consent. The juror claimed and received his fees as a witness, so long as to include some portion of the time

while he was sitting as a juror, to try the cause. This was incorrect, but it does not appear, that the plaintiff or the juror knew it to be so. This testimony does not present a case of gratuity within the statute, chap. 115, § 76. There is no testimony authorizing the inference, that there was any corrupt intention. It was decided in *Fellows'* case, 5 Greenl. 333, that a juror, who had been summoned as a witness against the defendant on a former trial, was not thereby rendered incompetent to sit as a juror for his trial. It is stated in that case, that "a juror may always be a witness for either party, and still retain his seat as a juror ; and a witness may be a legal juror." While this is true, it is much better to avoid all suspicion of partiality by allowing a person so situated to retire from the jury before the commencement of the trial. The facts proved in this case do not authorize the Court to set aside the verdict on account of any misconduct of the plaintiff or of the juror.

There is also a motion to have the verdict set aside to enable the defendant to introduce newly discovered testimony.

Of this, the first item is the book, in which the witness, Joel Howe, Jr., made entries of the precepts served by him.

Some of the entries found in that book would be inconsistent with the truth of certain parts of his testimony. There was at the time of the trial abundant testimony introduced to prove that he had made statements, and had testified on other occasions, in a manner inconsistent with the truth of some part of his testimony. Of this the jury must have been well satisfied. This book could only afford cumulative evidence of the like kind. If it had been before the jury, it does not appear to be of sufficient importance to lead to the conclusion, that their verdict would have been different.

Another item is the docket kept by Bartlett Sheldon, containing a list of actions entered before him as a justice of the peace.

This could only have the effect to impair the confidence reposed in the truth of his testimony. There was proof, that he had testified differently on a former occasion, and testimony

was introduced to prove, that his character for truth was bad, and that it was good. The docket would not necessarily prove, that his testimony could not have been true.

The other item is, that now presented by the testimony of George W. Philbrook; that he sold certain horses and carriages to Simon Cotter, which came to the possession of the plaintiff and Joel Howe, Jr.; that a part of the property was taken back, and that the plaintiff paid the balance due on Cotter's note. This testimony is quite inconclusive to prove, when taken in connexion with the other testimony, that the plaintiff bribed or corrupted Howe, Jr., to induce him to testify falsely.

A new trial to permit newly discovered testimony to be introduced, should only be granted, when such testimony is not cumulative and when there is reason to believe, that the verdict would have been different if it had been before the jury. The newly discovered testimony is not of that character.

*Exceptions and motions overruled.*