## Case No. 17,009.

### VOSE et al. v. MAYO.

[3 Cliff. 484.] [1]

Circuit Court, D. Maine.    Sept. Term, 1871.

New Trial—Practice—Verification of Motion —Affidavits — New Evidence — Court Rules—Waiver of Objections.

1. Where a motion for new trial is founded on facts not within the knowledge of the presiding justice, and not appearing on his minutes, it must be verified by affidavit, unless compliance with that requirement is waived by the opposite party.

2. No affidavit of merits is required where the motion is properly addressed to the minutes of the presiding justice, as where the motion is to

---

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

set aside a verdict for error of ruling in the admission or rejection of evidence, or for refusing to instruct the jury as requested or for misdirection, or because the verdict was against law or against the evidence or the weight of the evidence.

3. The theory in such cases is that all the matters of fact alleged are within the knowledge of the presiding justice, or may be verified by reference to his notes.

4. Where the motion is founded upon alleged newly discovered evidence, or on the charge of misconduct by the opposite party or the jury in respect to the trial, it presents a preliminary question whether the facts are such as to make it the duty of the court to order notice to the opposite party and to direct how the proofs shall be taken.

5. In all such cases the motion must be in writing, and must, unless the requirement is waived, be supported by affidavit.

6. Affidavits of the witnesses to be examined cannot be considered a compliance with the twenty-second rule of the circuit court relating to motions for new trials based upon newly discovered evidence.

7. The purpose of the rule is that the allegation of newly discovered evidence may be verified by the oath of the party or his attorney.

8. Probable cause for the motion must be shown, unless waived, before the court can interfere and give notice to the other side or take any steps to prevent the prevailing party from applying for judgment on the verdict.

9. Where the motion is properly verified by the affidavit of the party, ex parte affidavits of the witnesses are enough to warrant an application for notice to the opposite party.

10. Such affidavits are not, without consent, admissible in the final hearing of the motion.

11. For that purpose testimony may be taken in open court in civil or criminal cases, by depositions [in civil cases] as provided by the acts of congress, or by interrogatories and cross-interrogatories, or, by consent, the court will, in its discretion, appoint a commissioner to take the testimony and report it to the court.

12. In this case both parties had acquiesced in the taking of affidavits of the witnesses to be examined, and the court therefore looked into the affidavits as if they had been admitted by consent.

13. The motion, however, was denied, first, because the evidence was not newly discovered within the legal meaning of the phrase; second, because that which was offered was within the reach of the party moving, at the former trial, and was merely cumulative.

14. Evidence offered, in order that the motion prevail, should afford a reasonable ground to conclude that it would be productive of a different result from the verdict once obtained.

[This was a suit by Francis Vose and others against Gideon Mayo.]

Motion for new trial.

N. Webb and J. D. & F. Fessenden, for plaintiffs.

A. A. Strout, for defendant.

CLIFFORD, Circuit Justice. Power to set aside a verdict before judgment and grant a new trial 's vested in the circuit courts "in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law," and the correct mode of applying to the court for the exercise of that power is by a motion for new trial,

which, under the rules of the circuit court in this circuit, must be made in writing, and must, unless the time is enlarged by leave of the court, be filed within two days after the verdict. Such a motion must assign the reasons for the application, and when the motion is grounded on facts not within the knowledge of the presiding justice, and not appearing in his minutes, it must be verified by affidavit, unless the requirement is waived by the opposite party. No affidavit of merits, however, is required when the motion is properly addressed to the minutes of the presiding justice, as where the motion is to set aside the verdict for error of ruling in admitting or rejecting evidence, or for refusing to instruct the jury as requested, or for misdirection, or because the verdict is against law, or against the evidence or the weight of the evidence, as the theory of the motion in all such cases is, that all the matters of fact alleged in the motion are within the knowledge of the presiding justice, or that they may be verified by reference to his minutes taken at the trial. Where the motion is for new trial on account of newly discovered evidence, or where the motion is grounded on the charge that the opposite party or the jury were guilty of misconduct in respect to the trial, the rule is different, as the motion in such cases presents a preliminary question whether the facts and circumstances disclosed are such as to make it the duty of the court to order notice to the opposite party, and to direct the mode in which the proofs shall be taken, and in all such cases the motion must be in writing, and must, unless the requirement is waived, be supported by affidavit. Johnson v. Root [Case No. 7.409]; Hill. New Trials, 393, § 35; Macy v. De Wolf [Case No. 8,933].

Two motions for new trial are filed in this case, neither of which is supported by the affidavit of the party filing the motion. They were filed by the plaintiffs, and are as follows: (1) That a new trial be granted because, as they allege, the verdict of the jury is against law and against the evidence in the case. (2) That a new trial be granted because, as they allege, they have discovered new and material evidence since the trial, not previously known to them, and they annex to the motion certain affidavits showing the nature of the evidence, and make the affidavits a part of the motion. Founded, as the present suit is, on two judgments previously recovered by the plaintiffs against the defendant. it will become necessary to refer to the causes of action set forth in the prior suits between these parties, in order that the exact nature of the controversy may be fully understood. Evidence was introduced showing that the plaintiffs agreed to sell to the Penobscot Railroad Company thirteen hundred tons of railroad iron and eventually to deliver the same to the company at Bangor, upon the conditions specified in the written agreement between the parties. Payment in cash for the amount of the duties was to be made by the company when the iron ar-

rived at the place of delivery, and the agreement was that the company should give to the plaintiffs their negotiable promissory notes for an amount equivalent to the value at the agreed price, with the addition of the extra cost of freight and insurance beyond the amount of such charges if the shipment was made to the port of New York, the notes to be given to the defendant and to be by him indorsed and to be made payable at a bank in New York City with interest as specified, in four months from the date of the arrival of the iron; and the further stipulation was that the title to the iron should remain in the plaintiffs with power to dispose of the same at public or private sale, in case the notes given for the purchase-money were not paid at maturity; that the company should also deposit with the plaintiffs as collateral security the first mortgage bonds of the company to double the amount of such notes, and also an irrevocable order upon the treasurer of the city of Bangor for an amount of the scrip of that city, to which the company was entitled, sufficient to cover the amount of the notes given for the railroad iron. On the same day, and as a part of the same agreement, John M. Wood, the contractor, the party interested, agreed with the plaintiffs for a specified commission, and other valuable considerations, "to indorse and become responsible to them" for the promissory notes given under that agreement. Pursuant to that agreement the notes were given by the company to the defendant, and were indorsed by him and the contractor as agreed, and it appears that the described bonds of the company to the amount of $146,000 were deposited by the company with the plaintiffs as collateral security for the payment of the promissory notes. Subsequently the iron arrived, but, the company failing to pay the notes, the plaintiffs took possession of the iron under the power reserved in the agreement, and sold the same, and commenced separate suits against the company and the defendant as first indorser.

These suits were commenced in Penobscot county, and they also commenced two suits in Cumberland county against John M. Wood, the contractor, as second indorser on the same notes. Judgments were recovered against the company and the defendant, who was sued in two actions. Two judgments against the defendant were rendered in favor of the plaintiffs in the supreme judicial court of the state at the January term of the court, 1859, holden at Bangor, within and for the county of Penobscot. Execution was issued in one for $23,440 debt, and $75.78 costs, and in the other for $8,576 debt, and $43.13 cost of suit, as appears by the executions introduced in evidence. Nothing was collected on the executions, and the present suit is an action of debt against the defendant founded upon those two judgments. Nine pleas were pleaded by the defendant, of which the first two were pleas of nul tiel record, which terminated in issues to the court. All that need be said upon that subject is that the issues under those pleas were found for

the plaintiffs, and that the trial proceeded under the other issues in the pleadings. Much reference to the fourth, fifth, and sixth pleas is unnecessary, as they terminated in issues of fact, and the respective issues were found for the plaintiffs. Special attention must be given to the third, seventh, eighth, and ninth pleas, as the issues of fact in which they terminated were found for the defendant, and he is entitled to judgment on the verdict, unless the verdict should be set aside for some one of the causes assigned in the respective motions.

Payment of the judgments described in the declaration to the plaintiffs on the 1st of January, 1860, is alleged by the defendant in the third plea, which is denied by the plaintiffs in their replication. As inducement he sets up, in his seventh plea, the two suits commenced in Cumberland county against the contractor as second indorser on the notes, and alleges that they agreed with the defendant in those suits as an adjustment of all matters in dispute between the parties, that judgments should be rendered therein for $25,000 as damages in the aggregate, to be apportioned in those suits at the discretion of the plaintiffs, and that at the April term, 1860, of that court, they recovered judgment in one of those suits for the sum of $23,440 and costs of suit, taxed at $32.22, and that at the October term following they recovered judgment in the other suit for the balance, to wit, for the sum of $1,560 damages, and costs of suit taxed at $29.77, and he alleges that both of said judgments were subsequently fully satisfied and paid. Most of the facts set forth in the seventh plea are admitted in the replication, but the plaintiffs allege that a much larger sum was due to them than the $25,000 for which the contractor as second indorser gave them judgment, and they deny that the sums recovered were agreed to be received in full satisfaction of their judgments against the defendant, or that the judgments which they recovered against the contractor as such second indorser were ever fully paid, as alleged in the plea. Satisfactory evidence was introduced that the plaintiffs, after the recovery of the judgments described in the declaration, and before the present action was commenced, sold and assigned to Dennistoun, Wood, & Co. the judgments in question and the notes on which the judgments were founded, and the defendant alleged in his eighth plea, that the assignees subsequently, to wit, on the 1st of January, 1864, settled and adjusted the same with the two indorsers on the notes, and received in full satisfaction of the judgments the sum of $1,237.50, as more fully set forth in the eighth plea. In their replication the plaintiffs deny that they ever made the assignment as alleged, and they also deny that they did on the day named, or at any other time, settle and adjust the matter with the two indorsers, or that they ever received the sum specified in the plea or any sum in satisfaction of said judgments and notes. Full payment to the plaintiffs is also

alleged in the ninth plea, and the replication filed by the plaintiffs is substantially the same as that filed to the third plea.

Plenary evidence was introduced that the plaintiffs on the 7th of April, 1859, agreed with John M. Wood, that, if the parties to those notes or any of them should pay to them within ninety days from that date the full sum of $25,000, they the plaintiffs would receive the same in full satisfaction of all their claim, and that they would surrender to the party legally entitled thereto all bonds of the company held by them as collateral security, and that all claims and demands between the parties should be considered as settled and adjusted. Judgments in their suits against the contractor and second indorser had not been recovered, but the defendant in those suits on the same day agreed in writing that a default might be entered in either or both of those suits, and that judgment might be taken in either or both for an amount not exceeding $25,000 in the whole, together with legal costs, and the case shows that judgment for the plaintiffs for the sum of $23,440 was subsequently entered in one of those cases in pursuance of that agreement. They had a right to enter judgment on that day, but the evidence shows that an extension was granted by consent, and at the October term, 1860, they entered judgment in the other case for the sum of $1,560 and costs, making the full sum of $25,000 without including costs. Executions were issued on both judgments, and the whole of the smaller judgment and all of the larger, except the sum of $1,237 of costs and interest, were satisfied by levying the executions on the estate of the judgment debtor, who was the contractor and second indorser of the notes.

Just after the date of that agreement the plaintiffs became embarrassed, and made the assignment described in the eighth plea, including the original contract for the iron, the notes, all the judgments and the claim to the bonds given by the company as collateral security for the payment of the notes. Due notice of the assignment was served on the two indorsers of the notes and on the railroad company. By virtue of the assignment the persons named as assignees claimed to be the owners of the judgments recovered against the company, and the several judgments recovered against the indorsers of the notes. They also claimed to be the lawful holders and owners of the bonds deposited as collateral security, and on the 25th of October, 1861, they sold $90,000 of the bonds for $5,000, still holding $50,000 of the same, the balance of the amount deposited as collateral security. Insolvency prevented the company from proceeding with the enterprise, and the franchise and estate of the company were transferred to a new company as assignees. Negotiations ensued between the new company and the indorsers of the notes on one side, and the holders of the balance of the bonds deposited as collateral on the other, for the surrender of the balance remaining of the bonds. Those negotiations with the holders of those bonds were conducted by the other parties through their attorney, who was a witness in the case. His testimony and other evidence in the case showed that they refused to surrender the bonds until they were paid the sum of $1,237.50, which they insisted was a lien upon the bonds. Wood was to pay $25,000 on the 6th of July, 1859, but the executions were not levied on his real estate until the 3d of May of the next year, and they insisted that they had a lien for the intervening interest and costs, and the evidence showed that the attorney of the other parties paid that amount to the attorney of the party holding the bonds, and received the bonds for the benefit of the contractor and second indorser of the notes given by the original company. Discussion of the rulings or instructions of the court is not required, as the exceptions taken at the trial are waived, and no questions of the kind are raised in the printed arguments. Instructions on all the points involved in the case were given at the trial, and in the absence of any exceptions it must be assumed that they were correct.

Questions of fact in view of the circumstances are the only questions to be examined under the motion. Brief reference will be made to those which were deemed of most importance at the trial, and which have been most pressed in this hearing. They are as follows: (1) That neither the plaintiffs nor their assigns have received the full amount of these judgments, nor have they accepted a less sum in full discharge of the amount for which the judgments were rendered. Suffice it to say, there was testimony on both sides of those issues, and the court is quite satisfied with the verdict of the jury, which is all that need be said upon the subject. (2) That the $25,000 which the plaintiffs agreed to accept was not paid within the time specified in the agreement, which is a correct statement of the fact; but the circumstances in evidence tended very strongly to show that the delay was waived, and that the payments as made were accepted as a fulfilment of the terms of the agreement, and the court properly submitted the point with the evidence to the jury. Evidently they accepted the real estate, secured by the levying of the executions, as payment under the agreement, and the testimony showed, if the witnesses were believed, that the balance was subsequently paid to the attorney of the holder of the bonds, and that the plaintiffs or their senior partner received the benefit of the payment. Viewed in that light, it is unnecessary to examine the third and fourth propositions submitted by the plaintiffs, as it is quite clear, from what has already been remarked, that they cannot be sustained. Grant the fact to be so, still the plaintiffs contend that the verdict ought to be set aside, because they insist that the attorney who received the balance of the $25,000 had no authority to accept the amount, that he was the attorney of

the assignees and not of the plaintiffs, and that neither he nor the assignees at that time had any legal or equitable, interest in the judgments in question. Full proof was introduced that the sum of $1,237.60 was paid to the attorney of the assignees while the bonds were in his possession, and he testified that the senior partner of the plaintiff's firm accepted the credit of the money. Whether he was the attorney also of the plaintiffs at the time the money was paid was left in doubt by the evidence, but there were facts and circumstances in the case tending strongly to prove the affirmative of the issue, and the point was properly one for the consideration of the jury. Certain legal questions were also discussed, but inasmuch as there were no exceptions, it is not deemed necessary to enter upon that topic.

New and material evidence, it is alleged, has been discovered since the trial, and the second motion is that the verdict may be set aside and a new trial granted on that account. Unaccompanied, as the motion is, by any affidavit of the party filing it, the practice of the court would hardly warrant the court in granting it without requiring the party to comply with the twenty-second rule of the circuit court, as the motion is obviously grounded on facts not within the knowledge of the presiding justice. and which cannot be verified by any reference to his minutes. Affidavits of the witnesses to be examined cannot be regarded as a compliance with that rule, as the purpose of the requirement is that the allegation that new evidence has been discovered since the trial may be verified by the oath of the party or of his counsel. Probable cause for the motion must be shown. unless the requirement is waived by consent, before the court will interfere and give notice to the other side, or take any step to prevent the prevailing party from applying for judgment on the verdict. Where the motion is properly verified by the affidavit of the party, ex parte affidavits of the witnesses to be examined are quite sufficient to warrant an application for notice to the opposite party, but such affidavits, except by consent, are not admissible in the final hearing of the motion any more than in the trial of an issue of fact to the jury. Testimony for that purpose may be taken in open court in civil or criminal cases, or by deposition in civil cases as provided in the acts of congress, or by interrogatories and cross-interrogatories as in other adversary proceedings between party and party, or by consent of parties the court in its discretion will, in a civil action, appoint a commissioner to take the testimony and report the same to the court.

Both parties, however, in the case before the court. have acquiesced in the course pursued by the plaintiffs and the court, in view of the circumstances. has looked into the affidavits of the witnesses. as if the affidavits were admitted by consent, and has compared the statements of the affiants with the evidence given at the trial, and the court is of the opinion that the motion, assuming the proceedings to be regular, ought to be denied for several reasons: Because the evidence is not newly discovered, within the legal meaning of that phrase. Evidence of the kind. in order that it may afford a proper ground for a new trial, must be in fact new, and such as reasonable diligence on the part of the party offering it could not have secured at the former trial, and must appear to be material in its object, going to the merits of the case, and not merely cumulative and corroborative or collateral. and it must, in general. be such as ought to be decisive and afford reasonable ground to conclude that it would be productive of an opposite result. Hill. New Trials, 375; 1 Grah. New Trials. 463. Nothing, says the latter commentator, but a clear case of injustice, occasioned by means beyond the control of the party, and the reasonable certainty of correcting it by those means since brought to light and placed within the reach of the applicant, will answer the purpose Comment upon the affidavits to show that the case made does not fall within any reasonable application of that rule is unnecessary, as the proposition is too plain for argument. Howard v. Grover, 28 Me. 97; Handley v. Call, 30 Me. 9; Snowman v. Wardwell, 32 Me. 275. Apart from that rule, however, it is obvious that the evidence offered was within the reach of the party at the former trial, and is merely cumulative. Alsop v. Insurance Co. [Case No. 262]; Carr v. Gale [Id. 2,433]; Gardner v. Gardner, 2 Gray, 434; McLaughlin v. Doane, 56 Me. 289; Atkinson v. Conner, Id. 546. The correct practice in such cases is of great importance. as the same rule, except as to the mode of taking the testimony, applies in criminal as well as in civil cases, where the defendant is found guilty, whether the charge is treason, murder, or piracy, or whatever the offence may be, as defined in an act of congress.

Motion overruled. Judgment on the verdict.