Fowler
v.
Ætna Fire Ins.
Company.

FOWLER and others *vs.* THE ÆTNA FIRE INSURANCE COMPANY
OF NEW-YORK.

Where, in a *policy of insurance*, a building, in which property insured was con-
tained, was described as " *a frame house filled in with brick*," IT WAS HELD,
that it was competent for the assured to prove a *usage* as between insurers
and insured, that a house filled in with brick in front and rear, and supported
on the one side by a wall of an adjoining house *filed in with brick*, and on
the other by the *brick wall* of an adjoining house, was considered " as a
frame house filled in with brick," within the meaning of the policy.

After *two concurring verdicts* in a case where there are many witnesses, and
much testimony on both sides upon a mere question of fact, and there is no
misdirection of the jury, a *new trial* will not be granted, although the court
may be of opinion that the verdict is against the weight of evidence.

THIS was an action of *assumpsit*, on a *policy of insurance*
against fire, tried at the New-York circuit in October, 1829,
before the Hon. OGDEN EDWARDS, one of the circuit judges.

The policy was dated the 18th October, 1825, and insured
the plaintiffs against loss or damage by fire to the amount of
$3000 on their stock in trade, consisting of boots, shoes and
materials for manufacturing the same, contained " *in a two
story frame house, filled in with brick*, situate No. 152 Chatham
street," in the city of New-York, for one year from the day of
the date of the policy. Within the year the house was con-
sumed by fire, and the defendants refused to pay, insisting
that the building did not correspond with the *warranty* in the
policy, that it was *a house filled in with brick*. The house
when built in 1804 was a frame building, placed between a
brick building below and a building next above, and might,
when built, have been drawn out entire from between the
two buildings, no part of it then being filled in with brick. It
was proved, however, that the house since 1804 had under-
gone some alterations, and from the testimony it is most prob-
able the *front* wall of the house was filled in with brick;
there was evidence also that the *rear* and *one side* of the build-
ing was filled in in like manner, although the fact was strong-
ly controverted by several witnesses who viewed the premi-
ses after the destruction of the building. It appeared to be
admitted that the wall of the adjoining house on one side of

the building in question was filled in with brick, and that the wall of the adjoining house on the other was a brick wall. A *frame house filled in with brick* was proved to be "a frame with a filling in of brick between the studs all round, front, rear and on the sides, up to the eaves or garret floor." The plaintiffs offered to prove by persons skilled in the business of insurance, that premises with a brick wall on the one side, and filled in with brick on the other, and in front and rear, were a better risk than a house actually filled in with brick, and that the amount of premium would be the same on both descriptions of risks; this evidence was objected to by the defendants and rejected by the judge. A witness who had been a *surveyor* for an insurance company in New-York for 27 years, called by the defendants, proved that in 1813 he made a survey of the premises, which then consisted of two buildings, the front building extending back 18 feet on the one side, and 25 on the other, and the rear building extending 28 feet still further back, and being 15 feet in width ; that the *front* building was not filled in with brick, but the rear building was filled in with brick. This witness testified that a *frame house filled in with brick* previous to the year 1828 *meant* a frame filled between the studs up to the eaves or garret floor : that it *now means,* filled in up to the peak or top. After this testimony was given by the defendants the plaintiffs called a witness who testified that he had been a *surveyor* of the *La Fayette Insurance Company* for about 2 years ; that the house in question having a brick wall on one side, and a house filled in with brick on the other, and filled in with brick in front and rear, would be *considered* as between insured and insurers, as *falling within the description of a house filled in with brick ;* it would be safer so situated than if filled in on each side, would be insured at the same premium, and would be considered in the policy as a house filled in with brick ; that such was the *usage* on the subject in the *La Fayette Insurance Company,* and that in making his examination of houses to be insured, he has considered them and described them *as houses filled in with brick,* although in fact they adjoin brick walls of other houses, and are not filled in with brick ; they would so describe such houses in his company,

NEW-YORK
July, 1831.

Fowler
v.
ÆtnaFireIns.
Company.

NEW-YORK,
May, 1831.

Fowler
v.
Ætna Fire Ins.
Company.

and it was the custom so to describe them; the LaFayette company had insured one house as such, though he recollect-ed but one instance. Another witness called by the plaintiffs testified that he had been surveyor of the *United States' Insurance Company* for about 4 years; that as between insured and insurer a house bounded on one side by a brick wall, and on the other by a filled in wall, and filled in in front and rear, would be *a house filled in with brick* within the meaning of the policy. On his cross-examination this witness said that a frame house filled in with brick, means a house filled in with brick on all sides between the studs up to the eaves, that he would describe the house in his survey exactly as it was, and would leave the company to describe it in the policy as they pleased; that he thought if a house like the one in question was described as a frame house filled in with brick, the description would be erroneous. Another witness testified that a house like the one in question would he *safer* than one filled in with brick and that the description would be correct as to *safety*; and another testified that he knew that it had been the practice of a particular insurance company in New-York (the Tradesmen's) to describe premises different from the fact, when the risk under both descriptions would be the same, and produced a policy in support of his testimony, which had been repeatedly renewed. In opposition to which evidence the defendants proved by the president of the *LaFayette Insurance Company* that his company never had insured a house like the one in question, *as a house filled in with brick,* and he, together with 2 other *presidents,* 4 *secretaries* and 1 *surveyor* of insurance companies in the city of New-York, testified that they knew of no *usage* or custom by which, as between assured and insurer, a house like the one in question would be *considered* as *a house filled in with brick.* It was proved that previous to the policy being signed; the president of the Ætna Company examined the building to ascertain if the walls were filled in with brick; that he sounded them in several places with his knuckles, and said " this is hard brick or filled in;" upon which Fowler, one of the plaintiffs, observed "he did not know, he rather suspected it was." The *policy* was filled up from one underwritten by the Tradesmen's Insur-

ance Company, who had insured $4500 on the same goods in the same building; the policy of that company was handed by Fowler to the secretary of the defendants, and he directed to follow the description in it.

The judge charged the jury that the sole question for them to determine was, whether the house which was burnt *was or was not a frame house filled in with brick;* that the parties must be held *literally* to their contract; that it was competent for the plaintiffs to have established a *usage*, and to have shewn the meaning of the words, "a frame house filled in with brick," as between assured and insurer, or how the contracting parties intended to use them in the policy, and it was for them to say how far the evidence went to establish such usage; that it was immaterial whether the premium would have been more or less if the house had been filled in, and that the plaintiffs, if they found in their favor, would be entitled to *interest* on the amount insured, from the expiration of 60 days after the preliminary proofs were rendered. The counsel for the defendants requested the judge to charge the jury that as there was no ambiguity in the words of the policy, they must give them their ordinary meaning, without reference to any custom attempted to be proved to give the words a different meaning; and further, that if they should find that one side of the building was not filled in with brick, they must find for the defendants, although that side of the building was erected against the brick wall of the adjacent house: the judge refused so to charge, being of opinion that there was *ambiguity* in the words of the policy, that they had a *technical* meaning, and therefore might be explained by parol testimony; and that it was the province of the jury to determine whether if one side of the building was not filled in, but yet adjoined the brick wall of the adjacent house, it did not fall within the meaning of the words, "a frame house filled in with brick," as between assured and insurer. The jury found for the plaintiffs, and the defendants now moved to set aside the verdict.

NEW-YORK,
May, 1831.

Fowler
v.
Ætna Fire
Ins. Company.

*E. Ward & S. P. Staples*, for the defendants.

*H. Maxwell*, for the plaintiffs.

*By the Court*, SUTHERLAND, J.  Two new trials have already been granted in this case; this is the third verdict which the plaintiffs have had in their favor.  When the case first came before us, in 6 Cowen, 673, we held that the description in the policy of the house which contained the goods insured, *as a frame house filled in with brick*, amounted to a *warranty* that it was a house answering that description, and that the plaintiffs could not recover, unless the proof strictly sustained the warranty.  The well established principle in marine insurance, that a warranty is in the nature of a condition precedent, and must be fulfilled or performed by the insured before performance can be enforced against the insurer, we held to be equally applicable to fire as to marine policies; we knew of no case or principle which would authorise a different rule of construction in the one case from that which the same terms had uniformly received in the other.  The verdict was then set aside on account of the misdirection of the judge.  He instructed the jury, that if the description was made by mistake, and not fraudulently for the purpose of getting insurance at a reduced rate, the plaintiff was entitled to recover.  In a case of warranty it is perfectly immaterial whether the misdescription is the result of fraud or mistake; it is a condition precedent, and no excuse can be received for the non-performance of it.  The second verdict was set aside as being against the weight of evidence on the controlling point, whether the house in question was or was not filled in with brick.

At the last trial, the charge of the judge in the abstract was correct.  It was undoubtedly competent for the plaintiffs to show that the words, " a frame house filled in with brick," had, by the custom or usage of insurers and insured, acquired a particular technical meaning, different from that which the words might generally be understood to import.  They are not definite and unequivocal in themselves; they may apply to the *partitions* as well as to the *external frame* of the house.  The plain-

tiffs' own testimony shows that they are not generally consider- ed as requiring the gables to be filled in, but that the brick *goes* no higher than the eaves; they are therefore susceptible of explanation, and if it had been shown that by the uniform and established usage and custom of insurers and insured, they were understood as embracing a house filled in in front and rear, with a brick house on each side of it, we should be bound to consider such to be their legal effect between these parties. But the difficulty in this case is, that the evidence to establish such usage is entirely defective, while the charge of the judge was perhaps calculated to make an impression upon the jury, that there was competent and sufficient evidence of such usage. Still there was evidence on both sides of the question; and I am not prepared to say that we ought, under the circumstances of this case, to consider the observation of the judge upon that point as amounting to a misdirection which would require us to set aside the verdict.

The evidence upon the question whether the house was in fact filled in with brick, is not essentially different from what it was on the preceding trial. I still think the verdict on this point is against the weight of evidence; but after two concurring verdicts in a case where there were many witnesses, and a great deal of testimony on both sides upon a mere question of fact, (supposing there was no misdirection,) I should not think it a discreet exercise of the power of this court again to interfere with the finding of the jury.

NEW-YORK,
May, 1831.

Fowler
v.
Ætna Fire Ins.
Company.

Motion for a new trial denied.