## JOYCE v. CHARLESTON ICE MANUF'G CO.

*(Circuit Court, D. South Carolina. April 30, 1892.)*

1. TRIAL—CONFLICT OF EVIDENCE—PROVINCE OF COURT AND JURY.
    When there is a conflict of evidence as to material facts, which conflict can only be solved by determining the credibility of the witnesses, the court has no authority to direct a verdict.

2. NEW TRIAL—MISCONDUCT OF WITNESS.
    The fact that a witness, on an objection to his testimony, intentionally deceived the court as to the statements he was about to make, is not sufficient ground for a new trial when the statements thus introduced were not in fact irrelevant, and had already been given in evidence.

3. SAME—WEIGHT OF EVIDENCE—OPINION OF COURT—THIRD TRIAL.
    Although a federal judge may give his opinion as to the weight of the evidence, yet, after two concurring verdicts opposed to that opinion, he cannot grant a third trial, except for substantial errors of law.

At Law. Action by E. F. Joyce against the Charleston Ice Manufacturing Company to recover damages for an unlawful detention of personal property. Heard on motion for a new trial. Overruled.

*Bryan & Bryan,* for plaintiff.

*Samuel Lord* and *J. N. Nathans,* for defendant.

SIMONTON, District Judge. This case has been before two juries. At the first trial, which was had in Greenville, the verdict was for the plaintiff. After hearing argument on motion for a new trial, the verdict was set aside, the court being satisfied that the jury were influenced by prejudice. The second trial was had at the present term in Charleston. The plaintiff again obtained a verdict. A motion for a new trial.

The action is for damages for the unlawful detention of personal property. The plaintiff was under contract with the defendant to dig an artesian well on its premises in the city of Charleston. The location of the proposed well was within the inclosure of the defendant. While the digging of the well was in progress, disputes arose between the plaintiff and the defendant respecting the performance of the contract. This dispute pending, plaintiff desired to remove from the inclosure of the defendant certain 10-inch tools and 10-inch pipe, rope, and some other materials needed by him for a well in Florence, S. C., and, as he alleges, not needed at the well in Charleston. Prior to this he had, at his own pleasure, brought to and removed from the premises of the defendant plant and materials used about the well without seeking the permission or consent of the defendant. On this occasion—13th February, 1890—such consent was asked for the removal of the articles specified. It was not given. The 10-inch plant and other material were not removed. One or more efforts were made by plaintiff with the same result. On 18th March following, a formal demand was addressed to the president of the ice company for the entire plant of the plaintiff of every description on the premises of defendant. This demand was mailed to the president, who was absent from the city. On the 24th March he replied in writing, acceding to the demand. This letter was received by

plaintiff on 28th. The entire plant was removed within two weeks afterwards. The business of plaintiff is to dig wells. He was under contract for wells in Florence, and in Savannah, Ga. The same witnesses, and no others, testified at this trial who gave evidence at the other. The testimony offered by the plaintiff purported to establish these facts: That when his desire to remove the 10-inch plant, etc., was made known to defendant, it was met with such language, attitude, and action upon the part of the agents of defendants as induced those acting on his behalf to believe that the removal of the articles desired would be resisted, even if it involved a breach of the peace. On the other hand, the testimony of the witnesses for the defendant was to the effect that, although the desire to remove these articles did not meet the approval of the defendant, no other mode of resistance was offered or threatened than a resort to legal proceedings to prevent or remedy the removal. The facts on each side were minutely detailed. The issue of fact thus raised, supported by conflicting testimony, was submitted to the jury for solution. They were instructed that there was no necessity whatever requiring the plaintiff to seek the assent of the defendant before or at the time of the removal of the plant and other articles. That, as a necessary result of his contract without any stipulation to that effect, he had free right of ingress to and egress from the premises of the defendant for the purpose of working on the well, and of carrying to it such plant and material as he deemed necessary, and of taking away from it such as he found useless. But if, before exercising his right of removal, he consulted the wishes of defendant, and met a refusal, and if in so refusing there was anything in the language, attitude, or action of the agents of the defendant which would induce a man with ordinary courage to believe that the refusal would be maintained, if need be, by a breach of the peace, the plaintiff need not assert his right by force, but could resort to this action. This issue of fact was presented in these words: "In short, was there an absolute refusal to permit the removal at all events, or was there a notification that an attempt to remove would be met by legal proceedings?" The verdict answered the first question in the affirmative.

The next question was as to damages. The jury were instructed, if they found for the plaintiff upon the issue above stated, that defendant was liable for all actual damages arising to the plaintiff by its act in any delay in or loss of contract thereby occasioned. Besides these, plaintiff sought punitive damages. The facts his witnesses sought to prove were these: That the agents of defendant had full knowledge that they had no right to hold or to refuse or prevent the removal of the property of the plaintiff, and that he had the right to remove it at his own pleasure; that, notwithstanding this, while negotiations were pending between him and defendant respecting the breach of contract, with the purpose of coercing him to their views, they unlawfully took possession of the property of plaintiff, and refused him access to it, accompanying the refusal with conduct indicating violent resistance if he attempted to remove any part of the entire plant. The evidence of the defendant went

to show that it never held or had possession, and that no refusal was made as alleged, and that nothing was done or said indicating any other purpose than an assertion of the rights of defendant within the law. This issue was submitted to the jury in these words:

"If the agents of the defendant acted with the high hand, regardless of the well-known right of the plaintiff, with a view to oppress and harass the plaintiff, you may find, if you find for him, punitive, exemplary, and vindictive damages, not exceeding in the aggregate $5,000. If, however, the defendant had no purpose but to resort for protection of its right to legal proceedings, or if it *bona fide* hesitated, fearing a compromise of its rights, you cannot find such exemplary, punitive, or vindictive damages. And, with no desire to control your verdict, I express to you the opinion that there is not room for such damages here."

The jury found for the plaintiff $2,500, a sum largely in excess of any actual damage proved. The defendant's motion for a new trial is on these grounds:

*First.* Because C. L. Parker, one of the plaintiff's witnesses, and, by his own testimony, interested in the event of the suit, by a trick upon the court and upon the counsel for the defendant brought out before the jury incompetent testimony, and such incompetent testimony must have influenced the minds of the jury in arriving at their verdict. This refers to an unpleasant incident at the trial. The witness Parker, the manager of the plaintiff, was on the stand. He had, among other things, testified to the conversations had with agents of the defendant. He was asked: "Did you have a conversation with any representative of the ice company on 28th March?" This was excepted to, as no part of the *res gestæ*, but was admitted. He then proceeded to read from a memorandum, purporting to have been made at the time, what he, the witness, said. During this reading the court interrupted him, saying, "We do not wish to know what you said, but what they said." Upon his replying that "you cannot understand what they said until you hear what I said," he was permitted to go on. After reading through his memorandum, he was asked, "What was said by them?" He answered, "Nothing further on this matter." He is a man of unusual intelligence. He must have known that when he was asked as to a conversation the replies of the other party were sought. His answer, when interrupted, distinctly intimates that he did have a reply. He did not have any conversation on the matters in issue, or any reply. His conduct misled the court, and was rebuked, not for what he said, but for resorting to deception gratuitously. All that he read out was in evidence already. Had it not been in evidence, a frank statement of the question would have brought the reply in evidence. No irrelevant testimony, however, came in, and this improper conduct of this witness is not of such character as to require a new trial of the case. The remaining grounds deserve and have received careful consideration.

*Second.* Because the verdict is excessive and against the evidence.

*Third.* Because the damages assessed by the jury could have been arrived at only by disregarding the instructions of the court. The jury found punitive damages, against the expressed opinion of the court.

This opinion was given under the sanction of *Lovejoy* v. *U. S.*, 128 U. S. 173, 9 Sup. Ct. Rep. 57; *Rucker* v. *Wheeler*, 127 U. S. 93, 8 Sup. Ct. Rep. 1142. The counsel for the defendant earnestly press the argument that the trial judge should have instructed the jury not to find punitive damages. The judges in courts of the United States have a discretion in the matter of the verdict. They are bound to assist the jury in reaching a conclusion, and may express an opinion upon the facts. At times they must assume the responsibility of instructing them how to find, thus taking the verdict from them. This is a large and dangerous power. The supreme court, in a long series of decisions, has carefully established the rules of its exercise, and have laid down the limits which it cannot pass. "When the evidence given at the trial, with all the inferences that the jury can justifiably draw from it, is insufficient to support a verdict, the court is not bound to submit the case to the jury, but may direct a verdict." *Randall* v. *Railroad Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322. "If the evidence, giving the plaintiff the benefit of every inference to be fairly drawn from it, sustained this view, then the direction to find for the defendant is proper," (*Kane* v. *Railway Co.*, 128 U. S. 94, 9 Sup. Ct. Rep. 16;) "whilst, on the other hand, the case should be left to the jury, unless the conclusion follows as a matter of law that no recovery can be had upon any view which can properly be taken of the facts the evidence tends to establish," (*Railroad Co.* v. *Woodson*, 134 U. S. 621, 10 Sup. Ct. Rep. 628.) These cases cite all the authorities, and fix the principle.

The testimony of this case did not permit the court to instruct the jury. There was a grave conflict, to be solved only upon the credibility of the witnesses. According to those of the plaintiff, there was a stubborn disregard of his known right, without any reason assigned, with a view to coerce him to terms, with an apparent intention to maintain the position at all hazards. That of the defendant contradicted all this. The facts, and all inferences from the facts, were left to the jury. Had the judge instructed them, he would have invaded their province. Will the court now set aside their conclusion? In *Henning* v. *Telegraph Co.*, 43 Fed. Rep. 132, this court deduces the following conclusion as the result of authorities cited:

"The right of the court, after verdict, to look into and test the evidence upon which the jury came to their conclusion cannot be doubted. Whenever there is no evidence to sustain the verdict, or when there is evidence, and it is insufficient, or when the preponderance of testimony is so great against the verdict as to raise the presumption that it was rendered through inadvertence or bias or prejudice in favor of or against one of the parties, or through some corruption, misconduct, or objectionable behavior on the part of the jury, the court will and should set it aside. But when there has been competent evidence submitted on both sides, and the result depends upon the credibility which the jury attaches to testimony of the witnesses, without regard to the number of these witnesses, and the jury reach their conclusion, it is not competent for the court to interfere with it. It is not the opinion of the judge as to the credibility of the witnesses which governs such a case, nor his conclusion as to the preponderance of the evidence, based upon his opinion as to their relative credibility, nor what verdict he would find were he a juror. The

jury alone can determine this. It is their exclusive province; and, were judges to interfere with it, the value of a trial by jury would be destroyed."

Every precaution was taken at the second trial to secure a fair verdict. The cause was heard on the first day of the term,—the first case called. The names of the entire panel, drawn from every portion of the state, were put in the hat, and 12 men drawn. The jury was an excellent representative of the people. It will be difficult, perhaps impossible, to get a better jury. Although my own conclusion differs essentially from that reached by them, it is an opinion formed from weighing the evidence and watching the witnesses. I cannot say that the jury were guilty of inadvertence, or were controlled by bias or prejudice, or that they disregarded the law as expounded to them. If the verdict be set aside, it will be simply because, on an issue of fact presenting conflict of testimony, the judge does not agree with the jury. "I confess," says TILGHMAN, C. J., in *Griffith* v. *Willing*, 3 Bin. 317, "that neither at the trial nor since further reflection has it struck me in the same point of view in which it appears to the jury. But that is not sufficient ground for awarding a new trial. I cannot discover any principle of law which the jury have violated, nor will I undertake to say that they have done so decidedly against the evidence as would justify the court in setting aside the verdict." "After two concurring verdicts, the court will not grant a new trial if the questions to be tried depend wholly on matters of fact, and no rule of law be violated, although the verdict be against the weight of the evidence." Grah. & W. New Trials, No. 54. The language of WATIES, J., in *Frost* v. *Brown*, 2 Bay, 139, 140, seems to fit this case:

"A second trial has already been granted, and two juries have concurred in finding the same facts. I think we have no authority to proceed any further, for, although I would never surrender a plain and certain rule of law to the caprice of a jury, or any number of juries, yet in a case where the law is complicated with facts, so that the construction and application of it must depend on the findings of facts, two concurring verdicts, even against the opinion of the judges, ought to be conclusive. As the present case appears to me to be such a one, I think that a third trial ought not to be granted."

Two juries have found from these facts that punitive damages should be awarded. The motion for a new trial is refused.