(7 Misc. Rep. 48.)

## HEUSNER v. HOUSTON, W. S. & P. F. R. CO.

(Common Pleas of New York City and County, General Term. February 5, 1894.)

APPEAL—REVERSAL ON THE FACTS.

An order denying a new trial will be reversed on appeal, where the appellate court is of opinion that the evidence was not properly weighed by the jury.

Appeal from trial term.

Action by Gertrude Heusner against the Houston, West Street & Pavonia Ferry Railroad Company. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Coudert Bros. and David Keane, for appellant.

A. G. Vanderpoel, for respondent.

BOOKSTAVER, J. This action was brought by the plaintiff, as administratrix of Joseph Heusner, deceased, for the death of her intestate, a youth a little more than 10 years of age, caused by the alleged negligence of defendant's servants. After a trial, the jury gave the plaintiff a verdict for $15,000. The only exceptions in the case were those taken to the refusal of the court to dismiss the complaint on motions made by the defendant both at the close of plain-

tiff's case and when all the evidence had been received. On the coming in of the verdict the defendant moved for a new trial on the ground that the verdict was against the evidence, against the weight of the evidence, against the law, and that it was excessive, no pecuniary damage having been shown. But two witnesses to the accident were called on plaintiff's behalf,—one a girl of about 13, who, as it was shown, had made repeated visits with the plaintiff and her daughter to the office of plaintiff's attorney. During the course of the trial she testified: "We three used to go down together to Mr. Vanderpoel's office." As before shown, she was a child of tender years, whose mind could easily be acted upon by grown persons, and the conversations which she heard between them; and, without imputing to her any moral guilt or intention to misrepresent the facts, her testimony under the circumstances, even if it had been consistently related, and was devoid of contradictions, should have been closely scrutinized. She testified that she was coming home from school, and was on the street, when she saw deceased pushed off the rear of defendant's car by the conductor, whereby he was thrown down on the street and a cart ran over him. In giving her testimony she became much confused, at one time testifying that deceased was pushed off the car on the side furthest from her, and again on the side nearest to her. This she changed two or three times. She also testified that the vehicle which ran over the deceased was a cart filled with brick, while it is clear from the testimony of other witnesses that it was a truck loaded with barrels of cement. The other witness on plaintiff's behalf also testified that the conductor shoved the deceased off the rear of the car, but she also was confused as to which side of the street she was on when she saw the accident, first stating that she was standing on the east side, and then on the west side, of the street, and then again that she was crossing the street at the time. The course of the examination, as it appears in cold type, was not calculated to create this confusion. Her sympathies were evidently excited by the misfortune of the plaintiff in the loss of her son, about which, as she testified, "she felt very bad." She may have intended to be honest, but her testimony was not of that convincing character that should, in our judgment, have outweighed the testimony offered on behalf of the defendant, who produced the conductor and three apparently disinterested and honest witnesses, whose testimony was in no way shaken by cross-examination, was consistent with itself and with the version of the affair as given by the other witnesses, although there were such differences in the minor details as are usually received as indications of the truthfulness of the testimony given, as each saw the occurrence from a different standpoint. Both the conductor and all of defendant's witnesses swear that he did not push the deceased off the car, and that he was not in a position to do so. One of the witnesses, a passenger on the car, sat at the rear end of it, on the left-hand side of the car going up, which was the west side, and the one on which the boy was immediately before the accident. She testified there was a window on her right; that the conductor

was taking fare, going first up on her side of the car and then coming back on the other side; that when the accident occurred he was still inside of the car, collecting fare; and when the boy saw the conductor coming in his direction he let himself drop off, and that the conductor did not in any way touch him, and could not have done so. The conductor himself swears to substantially the same state of facts, and that the nearest the deceased ever was to him was at least six feet. Neither of the other witnesses were on the car at the time of the accident. One of them was standing two doors north of Second street in Avenue C, on the east side of the avenue, where he could see all that took place; and he testified that while the conductor was still inside the car, but moving towards the platform, he saw deceased jump or throw himself off the car, and that the conductor did not touch him. He further testified that after the accident he went to the station house, and summoned an ambulance, and then came back with the officer who carried the boy to the station house; that the boy commenced to cry, and said he would not do it any more; that there was nothing the matter with him, and that it was his own fault. The other witness was going through Avenue C, to Houston street, and was near the corner of Second street and Avenue C at the time when he saw the boy hanging on the back of the car, holding on with one hand to the handle of the brake and the other on the rear of the car; that the conductor was inside at the time; that as the conductor was going towards the door, and before he reached the boy, the latter jumped off; that he did so when the conductor had about reached the door, but had not yet gone on the platform; and that the conductor did not touch him at all. Under these circumstances, while we do not think the court erred in refusing to take away the consideration of the question of negligence from the jury, we think that evidence was not properly weighed by the jury, and the verdict should be set aside.

In Clark v. Bank, 8 Daly, 504, Hon. Charles P. Daly, then chief justice, observed:

"Juries are not infallible. They are individually and collectively subject to the ordinary infirmities of human nature, and cases do occur where, if the court did not interpose, and set aside the verdict, it would amount to a denial of justice. By doing so no right is taken away. The effect of setting aside the verdict is simply to subject the case to further consideration by another jury, and even this has its limits."

—Quoting Fowler v. Insurance Co., 7 Wend. 270; Talcot v. Insurance Co., 2 Johns. 124:

"This supervisory authority over the verdict of a jury even upon a question of fact, is a most salutary one, and, in the language of Graham, no lover of justice would wish to see it crippled or narrowed, as it might otherwise be in the power of juries to trample upon justice."

See, also, Baxter v. McDonald, 5 Daly, 508; Molloy v. Railroad Co., 10 Daly, 454; McCarthy v. Railroad Co., Id. 540; Macy v. Wheeler, 30 N. Y. 237; Thompson v. Menck, 22 How. Pr. 435; Kelly v. Frazier, 27 Hun, 315; Hamilton v. Railroad Co., 53 N. Y. 27; Smith v. Insurance Co., 49 N. Y. 211; Engel v. Schoolherr, 12 Daly, 417;

Kummer v. Railroad Co., (Com. Pl. N. Y.) 21 N. Y. Supp. 941. In the latter case the learned judge who delivered the opinion of the court said:

"On an appeal from an order denying a motion for a new trial, it is the right, and, for that matter, the duty, too, of the court at general term to review the evidence, and to set aside the verdict if believed to be unsupported by credible proof, and contrary to the justice of the case; otherwise there would be no relief from a judgment unaffected by legal error, though resting upon a verdict in itself infirm from a defect in the evidence satisfactory to the reason and conscience of the court; and, in view of the prevalent disposition of juries in cases of personal injury to award damages against corporations upon slight or equivocal evidence, we conceive it an imperative duty not to relax that supervision of their determinations which the law exacts of us in the interests of public justice."

The only proof in regard to any pecuniary damage resulting to the next of kin is of the slightest character, and amounts to no more than that the boy, although attending school, at times did errands for his mother. Indeed, it has been said by the court in a recent case that there is no rule of estimating damages for the death of a young child, (Railway Co. v. Wilson, 35 Ill. App. 346;) it is largely a matter of conjecture. In arriving at a conclusion the mental and physical characteristics of the intestate must be taken into consideration, as well as his probabilities of life, and his present or prospective ability. Under the proof in this case we think the mere pecuniary loss, which is the only thing that can be considered by the jury, was estimated by them at a very large sum. The judgment should therefore be reversed, and a new trial ordered, with costs of this appeal to the appellant to abide the event. All concur.