PETER F. CARR *vs.* AMERICAN LOCOMOTIVE CO.

JULY 12, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Bills of Exception by Both Parties.*

Where a plaintiff has brought his bill of exceptions to the decision of the Superior Court, granting a motion for a new trial, the defendant may properly file his bill of exceptions to rulings, etc., so that, if the court sustain the exceptions of plaintiff, it may consider defendant's exceptions, and, if they constitute reversible error, remit the case for a new trial.

(2)  *Concurring Verdicts.   New Trial.*

After three concurring verdicts, upon conflicting evidence, the court, having twice remanded the case for a new trial, and having given sufficient opportunity for a fair determination of the disputed questions, will not longer interfere with the finding of the jury, where there has been no error of law which affects the verdict.

(3)  *Concurring Verdicts.   Disapproval of Trial Judge.*

The doctrine of concurring verdicts is superior to the rule in *Wilcox* v. *R. I. Co.*,
   29 R. I. 292, as to the force to be given the decision of the trial judge in
   passing upon motion for new trial.

(4)  *Evidence.*

" Q. Have you ever known of an operator being injured in operating the fur-
   nace before?" was properly ruled out, since the furnace might be defective,
   and a part blow out before, because of defects, and the operator at the time
   be uninjured.

(5)  *Master and Servant.   Defective Appliances.*

In an action for injury caused by the blowing out of a valve stem, the facts
   with regard to the condition of the stem which plaintiff actually knew was
   all the knowledge he was required to have, and he was not required to inform
   himself as to the experience of other workmen about the furnace.   He was
   under no duty to inspect the mechanism where his duties did not require or
   permit him to withdraw the stem and examine its threads.

Blodgett, J., dissents.

TRESPASS ON THE CASE for negligence.   Heard on excep-
tions of plaintiff. and sustained.

SWEETLAND, J.   This is an action of trespass on the case
for damages for personal injuries resulting from an accident
in the shop of the defendant company in June 28th, 1902.   The
plaintiff was at that time in the employ of the defendant, in
said shop.   The plaintiff had been engaged in such employment
for several months prior to the accident, heating rivets for
the boilermakers in defendant's boiler shop in certain rivet-
heaters provided by the defendant for that purpose.   At the
time of the accident the plaintiff was working at a rivet-heater
known as an oil-heater, provided with a burner adapted for the
use of oil as a fuel when supplied under pressure, so that oil
was burned as it emerged in the form of spray from the burner
and entered the furnace of the rivet-heater.   This burner con-
sisted of a combination of three valves fitted in an upright
supply pipe at a convenient point opposite the opening in the
furnace of the rivet-heater so as to permit the projection of
the flame produced by the burning oil under pressure through
said opening into the furnace.   The top valve controlled the
supply of air in the pipe carried under pressure to the burner

for the purpose of producing the spray of oil desired for combustion. The bottom valve controlled the supply of oil in the pipe also forced under pressure to the burner. The middle valve controlled the flow of the mingled oil and air, meeting in the burner, and regulated the supply. The burner was provided with a nozzle or nose several inches in length opposite this middle valve and extending into the furnace itself. The middle or burner valve was equipped with a threaded valve-stem adapted to screw into the body of the valve. This valve-stem, if in good condition, when inserted into the body of the valve, required about nine turns to be screwed to its seat in the valve. This valve-stem could be wholly unscrewed and withdrawn from the valve and was not provided with any checking or holding device to prevent its being so unscrewed and withdrawn. The plaintiff claims that the burner valve-stem upon the rivet-heater, at which he was working at the time of the accident, had become worn in its threads and loose in the valve; that it had been subjected to abuse and injury while it was being repaired and its handle replaced some time before the accident; that it was dangerously loose in the valve, and that when opened a very few turns, it was liable to be blown out by the pressure of the oil and air. The plaintiff alleges that this unsafe condition of the valve-stem was known to the defendant, but was unknown to him. The plaintiff claims that on the morning of the accident he began work by starting a fire in the oil-heater, in the usual way; that after the fire had been started he undertook to regulate the fire and the flow of oil by turning this middle valve as usual; that he turned the valve-stem two or three turns, when the stem blew out past him and fell to the floor some few feet away from the burner; that a stream of oil under pressure immediately followed the valve-stem through the opening in the valve, striking against his body with such force that portions of the oil rebounded, in the form of spray into the furnace fire, whereby it became ignited, and the flames were thus communicated to the oil, then playing upon him from the burner, so that he was enveloped in flames, his clothing took fire and his face, neck, chest, and arms were badly burned.

The case was tried before a justice of the Superior Court and a jury. At the trial, the defendant produced in court as an exhibit, marked defendant's exhibit A., a combination of three valves fitted to a pipe, which the defendant claims were the same pipe and valves which were upon the rivet-heater, operated by the plaintiff, at the time of the accident, and which the defendant had removed, shortly after the accident, and had preserved to be offered as an exhibit at the trial. The plaintiff denied that the stem in the middle, or burner, valve in Exhibit A, was the same burner valve-stem that was in the appliance at the time of the accident. There can be no question that the burner valve-stem in exhibit A. is in good condition. The identity, therefore, of the burner valve-stem produced in court became a most important issue before the jury. At the trial the jury returned a verdict for the plaintiff in the sum of $22,895. In addition to its general verdict, the jury returned a special verdict upon certain issues submitted to it. These special issues, with the jury's findings thereon, are as follows:

1. Was the valve-stem produced in court as a part of the burner-valve in question, and forming a part of defendant's exhibit A, the stem operated by the plaintiff at the time of the accident? No.

If the answer to question one (1) be no, then the jury should answer the following questions:

2. Was the thread on the stem of the burner-valve operated by the plaintiff at the time of the accident, then in good working condition? No.

3. Was the thread in the body of the burner-valve operated by the plaintiff at the time of the accident, then in good working condition? Yes.

4. Did the middle valve-stem in the apparatus operated by the plaintiff at the time of the accident blow out of the valve when operated two turns, while being so operated by him? Yes.

5. Were the agents of the defendant company in charge of the boiler-shop notified that the middle valve-stem used in

said apparatus had blown out of the valve while in operation prior to the accident? Yes.

The defendant duly filed and prosecuted its motion for a new trial in the Superior Court upon the grounds that the general verdict of the jury and the first, second, fourth, and fifth special findings of the jury were against the evidence and the weight thereof, and that the damages awarded by the jury were excessive. The justice presiding at the trial, after hearing the motion for a new trial, decided that on the issue whether the middle stem of exhibit A. was or not the stem that was on the apparatus at the time of the accident, the weight of the testimony was with the defendant and granted the motion for new trial. The case is before this court upon the plaintiff's exception to the decision of the Superior Court granting the motion for new trial. The defendant has also filed a bill of its exceptions, taken at the trial, to various rulings and instructions of the justice presiding. The defendant claims that these rulings and instructions to which it has taken exception constitute reversible error and entitle it to a new trial, and urges that, if this court should for any reason sustain the plaintiff's bill of exceptions, it should not sustain the verdict of the jury, but should order a new trial. We are of the opinion that the procedure of the defendant is proper, and that if the plaintiff's exceptions are sustained, the court should then consider the defendant's exceptions, taken at the trial; and if the defendant's exceptions constitute reversible error, the case should be remitted to the Superior Court for a new trial.

This case has been tried four times. The first trial was in the Common Pleas Division of the Supreme Court, and resulted in a disagreement of the jury. The second trial was in the Common Pleas Division of the Supreme Court, and the jury returned a verdict for the plaintiff for $18,000, with a special finding that exhibit A. includes the identical burner-valve and stem which were operated by the plaintiff at the time of the accident. Upon petition, the Appellate Division of the Supreme Court granted a new trial (*Carr* vs. *American Locomotive Co.*, 26 R. I. 180). Upon the establishment of the Superior Court

this case was transferred to that court, and the last two trials have been in that court. The third trial resulted in a verdict for the plaintiff for $20,000, with a special finding that the burner valve-stem forming a part of exhibit A. was not the stem operated by the plaintiff at the time of the accident. The justice who presided at that trial denied the defendant's motion for a new trial. Upon exception to that decision this court sustained the exception and ordered a new trial (*Carr* v. *American Locomotive Co.*, 29 R. I. 276). A fourth and last trial was had with the result, herein stated, of a verdict of $22,895 for the plaintiff, with a special finding by the jury that the burner valve-stem forming a part of exhibit A. was not the stem operated by the plaintiff at the time of the accident.

It therefore appears that there have been three concurring verdicts in favor of the plaintiff. At the time of the first verdict there was no procedure in this State permitting a review of the jury's finding by the justice presiding at the trial. After the second verdict the justice presiding, acting under such a procedure, after hearing the testimony, denied the motion for a new trial and approved the verdict. The justice presiding at the last trial has decided that the weight of the testimony is with the defendant. After the first and second verdicts this court reviewed the testimony and decided that in its opinion the evidence preponderated in favor of the defendant, and that there should be new trials. And now, after another jury has found in favor of the plaintiff's claims, this court is asked again to disregard the finding of the jury and to send the case again for another trial before another jury.

From the record before us it does not appear whether at the first two trials the justices were asked to direct verdicts in favor of the defendant; but in each instance the case was submitted to the jury. At the third trial a motion was made that the jury be directed to return a verdict for the defendant. The motion was denied, and this court said in *Carr* v. *American Locomotive Co.*, 29 R.. I. at 290: "The forty-sixth exception was taken to the court's denial of a motion to direct a verdict

for the defendant upon all the testimony. The evidence was conflicting and was properly left to the jury." At the last trial the justice presiding refused to direct a verdict in the defendant's favor. We have carefully read and considered the transcript of the testimony given at the last trial. The plaintiff has produced the testimony of seven new witnesses in support of his claim as to the defendant's negligence and the identity of the middle stem on exhibit A. The case for the plaintiff is much stronger than at the former trial. Upon this testimony, to order judgment for the defendant would be highly improper. If the case was before us for the first time, we should hesitate to disturb the verdict of the jury but for the decision of the justice presiding at the trial, whose decision will in ordinary cases be given much persuasive force by this court in appellate proceedings. Thus it has appeared to every judicial mind which has considered the testimony in this case that the deductions which may fairly be made upon the evidence are conflicting, that there is substantial evidence to support a verdict for the plaintiff, and that it is a case in which, under the constitution of this State, the determination of the facts must be made by a jury. The effect of the two opinions of this court in granting new trials was not that the verdicts in the plaintiff's favor were entirely unjustified, for in that case the court would have exercised its authority and ordered a judgment for the defendant. The opinions indicate, rather, that the court was not satisfied that justice had been done, that in its opinion another opportunity should be given to the parties to present further testimony if they were able, and that the court might have the benefit of the finding of another jury upon the issues. In McCann v. New York, etc., 73 N. Y. App. Div. 305, the court, in considering the effect of concurring verdicts, said: "These issues of fact must be ultimately decided by the jury. The single question presented, therefore, is whether this court can or should accomplish indirectly by setting aside the verdict what it could not accomplish directly, viz., prevent a recovery by the plaintiff. . . . While the trial court and the Appellate Division should not hesitate to set aside a verdict as against

the weight of evidence, where the ends of justice appear to require a new trial, yet when it comes to setting aside on this ground alone three verdicts rendered in an ordinary action possessing no extraordinary features, the court should hesitate lest it usurp the functions of the jury." In some States it has been provided by statute that there shall not be granted in any case, to the same party, more than two new trials on the ground that the verdict is contrary to the evidence, or that it is not sufficiently supported by the evidence. Thus fixing in those States the rule as to the effect of concurring verdicts when there has been no error of law. In the absence of such statutory (2) provision the doctrine has been generally accepted, by the courts of the various States, that, in cases where the evidence is conflicting and a judgment cannot be directed, and successive juries have returned a verdict for the same party, there comes a time when the court upon the facts will no longer oppose their judgment to that of the jury, but will bring long-continued litigation to a close. This doctrine has not been accepted in a few cases and by some eminent jurists in dissenting opinions, and the position has been taken, as in the dissenting opinion in *McCann v. New York, &c.* 73 N. Y. App. Div. 305: "A wrong committed, no matter how often, never makes a right. This verdict is wrong; it is the result of misconception, prejudice or partiality and ought not to be approved by the court. Upon substantially the same state of facts we have several times declared that the plaintiff ought not to recover, and yet we are about to permit a recovery, because the jury forsooth have, for the fourth time, committed the same wrong. The law imposes a duty upon this court to review verdicts, and whenever it can be seen that injustice has been done, by reason of the jury not properly considering the evidence, or that its action has been influenced either by prejudice or partiality, then the court ought, in the discharge of its duty, to fearlessly exercise the power given to it by the statute (Code Civ. Proc. Sec. 1317) and right the wrong by setting the verdict aside and ordering a new trial, and this as many times as may be necessary to accomplish the proper result. Justice never tires, and

an act ought not to be approved in its name which wrongfully takes property from one person and gives it to another." This position presupposes in the judicial mind an infallibility in the determination of conflicting issues of fact which few courts would claim for themselves. If it is unquestioned in the mind of the court that a wrong has been committed by the verdict of the jury, surely the verdict should not be allowed to stand. The law provides a method by which such wrong can be corrected, and, regardless of the jury's verdict, a judgment should be ordered for the other party. That an appellate court has twice remanded a cause for a new trial indicates that the evidence of a wrong committed is not indubitable. The court may have an opinion or a suspicion that an injustice has been done, but it is unable to so declare with certainty. Courts recognize that it is not given to human tribunals to determine with the exactness of mathematical demonstration what is the true and just conclusion upon conflicting facts, with regard to which there is the opposing testimony of witnesses, as to whose reliability and good faith different minds may reasonably disagree. Cases involving such conflicting statements of fact must of necessity be determined in the courts, ultimately by the finding of a jury, but the true solution can not be found with demonstrative certainty. Hence an appellate court, having given sufficient opportunity for a fair determination of such disputed questions, will not longer interfere with the finding of the jury. To take this course is not to weakly permit or to approve the doing of a wrong in the name of justice, but is to recognize the proper functions of the court and the jury, and, after exercising due caution to prevent injustice, places the determination of disputed questions of fact in the tribunal provided by our constitution and laws. This doctrine has been recognized by this court. In *Steadman* v. *Wilbur*, 7 R. I. 481, Ames, C. J., said: "After two full trials in this court by impartial juries, in which verdicts were rendered for the defendants, we certainly shall not open this case for a new trial, without strong proof that justice imperatively demands it. We cannot say, looking at the evidence, direct and circumstan-

tial, although not as full as might be desired, that the jury must have been mistaken or partial to have rendered the verdict that they did. We do not see that this litigation can be rightfully permitted to go any farther; and upon all the grounds, dismiss this motion for a new trial, with costs." In *Rounds* v. *Humes*, 7 R. I. 535, the court found that the plaintiff had not only failed to prove the allegations of his declaration but had proved the precise contrary of it, and the court was obliged to set .aside a second verdict in the plaintiff's favor, and said: "It is with reluctance that the court grants a new trial on the ground that the verdict is against the evidence, where the verdict is the second which has been obtained by the prevailing party. In the present case, however, we think that our duty leaves us no choice." The court in that case recognized the exception to the rule as to concurring verdicts afterwards followed in *Burnham* v. *N. Y., Prov. & Bost. R. R.*, 17 R. I. 544 and 18 R. I. 494. That where it conclusively appears that the verdict is wrong the court will not permit it to stand although it may be the second or third successive verdict for the same party. In *McNeil* v. *Lyons*, 22 R. I. 7, the court said: "In view of three .concurring verdicts for the plaintiff, the court must assume, even though it may not be satisfied, that the verdict is not against the evidence."

"In *Burnham* v. *N. Y., Prov. & Bost. R. R. Co.*, 17 R. I. 544, and 18 R. I. 494, this court set aside three concurring verdicts, but for reasons which do not apply to this case. In that case, in the opinion of the majority of the court, it conclusively appeared that the engine which Burnham was running, comparing its admitted rate of speed and the distance to be covered, must have been beyond the electric signal, so that he could have seen it if he had been looking. In this case there is no such degree of certainty."·

The decisions in most of the other States are in accord with ours. In *Brown* v. *Paterson Paper Co.*, 69 N. J. L. 474, a former verdict had been set aside because against the weight of the evidence. The court said: "While in this state there

is no statute or rule established by decisions, limiting the number of times this court may set aside a verdict and grant a new trial because it is against the weight of the evidence, still a second concurring verdict upon the same state of facts or on slightly varying evidence should cause the court to hesitate before granting a third trial. . . . There is evidence from which the jury might have found both these facts the other way, but, as upon both trials in this cause the jury have found these facts in favor of the plaintiff, we think, under the circumstances of the case the rule to show cause should be discharged." In *Hazzard* v. *Mayor, &c.*, 77 Ga. 54, the opinion of the court was: "The questions of fact being the peculiar province of the jury, and that body having three times, by three several and different representatives of the jury box each time, found for the plaintiff, and the last time a considerate and reasonable verdict, the law, which invests that body of men of the vicinage with the judgment over facts, as it does the presiding judge over law, will not permit this court in the last resort to allow the judge to control the jury *ad infinitum* upon facts, where there is evidence (though, in the judgment of that court and this, it be comparatively weak) in which repeated findings may rest; because to allow this will be to allow the judge to oust the jury of its constitutional prerogatives, and thus to unite in one, two separate jurisdictional powers clothed by the constitution and laws with distinct functions." *Keans* v. *Jones*, 77 Ga. 90; *Harrigan* v. *Railway Co.* 84 Ga. 793. In the later Georgia case, *Central Railroad Co.* v. *Kent*, 91 Ga. 687, applying the rule as in *Burnham* v. *N. Y., Prov. & Bost. R. R. supra*, a majority of the court, after a third verdict for the plaintiff, refused to affirm it on the ground that there was no evidence to support it, and in that view of the case directed that the plaintiff's action be dismissed. In *Handly* v. *Call*, 30 Me. 9, a verdict obtained for the plaintiff at a former trial had been set aside; the court said: "Another jury has come to the same conclusion. The opinion of the court cannot be substituted for that of the jury." *Hyde* v. *Haak*, 132 Mich. 364; *Joyce* v. *Charleston Ice Manuf'g Co.*,

50 Fed. 371; *Frost* v. *Brown*, 2 Bay (S. C.), 139; *Fowler* v. *Attica Fire Ins. Co.*, 7 Wend. 270. In *McCann* v. *New York*, 73 N. Y. App. Div. 305, the court said: "A sufficient number of trials has now been granted to remove any suspicion of the existence of bias, passion, prejudice or corruption, and it becomes a mere matter of judgment on questions of fact. The administration of jurisprudence where trial by jury is preserved goes upon the theory that the judgment of twelve laymen upon a question of fact is safer than that of a smaller body of judges who are more removed from the people. An unwarranted exercise of this power to set aside verdicts as against the weight of the evidence would sooner or later bring the judiciary into disrepute. We think any further interference with the verdict of the jury in this case would be unauthorized and unjustified."

(3)    In the case at bar, we are of the opinion that the time has now arrived when this rule with regard to concurring verdicts should be applied, and if there has been no error of law, occurring at the trial, which affects the jury's verdict, that verdict should be allowed to stand. This conclusion as to the force and effect of the three successive verdicts for the plaintiff, notwithstanding the decision of the justice of the Superior Court, is not in disregard of the rule in *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292. The doctrine as to the force of concurring verdicts is superior to the rule in the *Wilcox* case. When the time comes in any case for the application of that doctrine it will be applied, not only in disregard of the decision of the justice of the Superior Court, but also in disregard of our own former conclusions in the case.

It now becomes necessary to examine the defendant's exceptions taken at the trial. Of these we shall consider the fifteenth, twentieth, twenty-third, twenty-fourth, twenty-fifth, and twenty-seventh, as they are the only ones now pressed by the defendant before this court.

(4)    The fifteenth is: "The presiding justice erred in refusing to permit one of the defendant's witnesses to answer the following question propounded by defendant's counsel: 'Have you ever known of an operator being injured in operating the furnace

before?' to which exception was taken." It is quite immaterial if the witness had known of no operator being injured before while operating the furnace. The furnace might be defective and the stem blown out of the valve many times before, because of its defective condition, and yet the operator at the time of such occurrences be entirely uninjured.

(5)      The twentieth exception is: "At the conclusion of the testimony the defendant requested the court to instruct the jury as follows: 'X. If you find that the valve with its stem was defective in not having any engagement between the threads on the stem and in the valve and would blow out when it was two turns removed from the seat, and that the plaintiff knew or might have known of such defective condition by the exercise of reasonable care, the verdict must be for the defendant.' The court refused the request so made, to which exception was taken." The justice presiding charged fully that the plaintiff could not recover if he knew of the defective condition of the stem. The defendant insists upon the rule laid down by this court that "a workman is bound by such knowledge as he ought to have as well as by what he actually has." That rule has no application to the facts of this case. The facts with regard to the condition of this stem which the plaintiff actually knew is all the knowledge which the law required him to have. He was not required to inform himself as to the experience of other workmen about this furnace. His duties did not require or permit him to withdraw the stem and examine its threads. He was under no duty to inspect the mechanism.

The twenty-third, twenty-fourth, twenty-fifth, and twenty-seventh exceptions are to instructions given to the jury upon the request of the plaintiff. We find no error in those instructions. They are in accord with opinions of this court previously rendered. The defendant takes nothing by its exceptions.

The defendant does not press before us the question of excessive damages, which was one of the grounds for its motion for a new trial before the Superior Court. We have, however, considered the question, and although the amount awarded by the

jury is large, in view of the very serious permanent injury to the plaintiff, we can not say that it is excessive.

The plaintiff's exceptions are sustained, and the case is remitted to the Superior Court with direction to enter judgment upon the verdict.

BLODGETT, J., dissenting.    I can not consent that $22,895.00 shall be taken from this defendant and appropriated to this plaintiff, upon this record.

In the majority opinion there is no question made that, upon the testimony in the case, the trial justice did his plain duty and set the verdict aside, as this court has twice done before, saying, on the first occasion (26 R. I. 180–188): "The evidence, therefore, very strongly preponderates against the verdict on every point urged to sustain it;" and on the second occasion (29 R. I. 276–285): "The evidence very strongly preponderates against the plaintiff as to the condition of the stem at the time of the accident and as to the identity of the stem in the exhibit with the stem in use at the time of the accident."    It is not questioned either, that, if this case were before this court for the first time, the verdict would be set aside for the same reason.    This is one of that class of cases in which a sympathetic jury, contemplating a crippled and maimed plaintiff, has, perhaps not unnaturally, yielded to emotion rather than to evidence, as have the other juries before whom the case has been presented, and as still other juries may do if it should be tried again.    If the duty of the court is ever to be performed to prevent injustice, this is such a case, inasmuch as I understand this to be the largest verdict of this nature ever returned in this State.

Article XII of amendments to the constitution has granted to this court final revisory and appellate jurisdiction upon all questions of law, quite as amply as it secures the right of trial by jury, viz.:    "Sec. 1.    The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity," and the determination of the question whether the evidence is sufficient to support a verdict is now and always

has been a question of law for the determination of the court. This revisory and appellate jurisdiction thus constitutionally conferred is "final" by the express provisions of the constitution, and is not to be ousted by the verdict of a jury however often repeated.

In considering the effect of the adoption of article XII of amendments to the constitution, it is said by Douglas, C. J., in *Higgins* v. *Tax Assessors of Pawtucket*, 27 R. I. 401, 404: "The Supreme Court remains the court of last resort, the embodiment of ultimate judicial power, and is given irrevocably the instruments which are required to make· its supervisory jurisdiction effectual. . . . The ultimate supervisory jurisdiction over all inferior courts and tribunals given to the Supreme Court by the constitution is inherent in its nature as a Supreme Court and in so far as it is ultimate can not be placed concurrently in an inferior court; and the final determinations of the Supreme Court are to be accepted as law by all other tribunals." The doctrine thus advanced is in harmony with the decision of this court in *Floyd* v. *Quinn*, 24 R. I. 147, pp. 149, 152 (1902), in which it is said by Stiness, C. J.: "We do not question that in establishing a Supreme Court there is something in a name. The provision that there shall be a Supreme Court clearly implies that it is not to be subordinate to any other court or tribunal, and that it is to exercise the highest of the judicial functions. . . . If a certain jurisdiction is given by the constitution to a court, it cannot be taken away or diminished by any legislation." Upon the doctrine advanced in the majority opinion, that this court will not now even examine this record to ascertain whether or not the evidence sustains this verdict, it is indisputable that that quality of finality is given to this finding of the jury, even if unsupported by the evidence, which the·constitution has vested in the determination of this court and not elsewhere. It is not the assumption of infallibility on the part of the court to revise and to reverse, if need be, on matter of law, the verdict of a jury, but it is the exercise of a plenary power and the discharging of a plain duty granted and imposed by that organic law which we are under

obligation to support and defend, and it is thus a duty which we are not at liberty to renounce.    The cases cited in the majority opinion referring to the so-called doctrine of concurring verdicts, so far as they are taken from the decisions of this State, were all rendered before the adoption of article XII of amendments in 1903, and so far as they are cited from the courts of other States, it is sufficient to repeat the language of this court in *Gunn* v. *Union Railroad Company*, 27 R. I. 320, 353, relative to the effect of a verdict of a jury in a civil case at the time of the adoption of the present constitution, viz.:

"Prior to the adoption of the constitution, the verdict of a jury in a civil case possessed no element of finality if appealed from or if reviewed, and such elements of finality as then appertained to jury trials in civil cases arose only after at least two concurring verdicts free from error in law as well as from misconduct at the trial, and to obtain two such concurring verdicts three jury trials might be required.    It is obvious that this was a very different requirement from the requirement of the common law of England in this respect, and upon which the argument of the plaintiff is based.    His contention, indeed, would require the court to impute to the finding of a verdict by a jury a finality prior to the adoption of the constitution, which could, at least, only be given by two juries and which might require the consideration of three juries.    And this without reference to any action of king or of General Assembly.

"As it is evident that the precedents and principles of the common law of England were not decisive of the effect of a verdict of a jury in a civil case in Rhode Island under the law of the State as it existed at the adoption of the constitution, so it is equally evident that the anomalous and unique conditions which prevailed here are not precedents in States in which the rule of the common law of England in this respect, has always remained in full force."

Section 15 of article 1 of the constitution is as follows:

"The right of trial by jury shall remain inviolate."

In *Gunn* v. *Union R. R. Co.*, 23 R. I. 289, 291, it is said, by Mr. Justice Rogers, of this provision:    "Article 1, Section 15,

means simply that in those proceedings in which a right to trial by jury exists at the time of the adoption of the constitution the right shall still continue: the constitution requiring the conservation, not an extension of the right of jury trial. *Crandall* v. *James*, 6 R. I. 144, 148; *Matthews* v. *Tripp*, 12 R. I. 256, 258; *Bishop* v. *Tripp*, 15 R. I. 466, 469; *Merrill* v. *Bowler*, 20 R. I. 226, 228; *The Narragansett Indians*, 20 R. I. 715, 766."

I have carefully read every one of the 1,520 pages of the record of this trial, which lasted eleven days, and am of the opinion that the action of the trial justice in setting the verdict aside was right. The majority opinion does not question the propriety of such action on his part. While the constitution and laws of this State remain as they now are it is just as much the imperative duty of this court to set aside verdicts unsupported by sufficient evidence as often as may be necessary to do justice as it is the duty of the court to take such action on the first trial. When the duty of this court to reverse verdicts in such cases is restricted by the constitution and the laws within limits which do not now exist, it will then be the duty of the court to observe those restrictions, as it is now its constitutional duty to disregard the supposed restrictions upon its action arising from successive verdicts, which not only find no warrant in the constitution but which will be sought for in vain upon the pages of the statute book.

The effect of the decision of the majority in the case at bar is to take $22,895.00 which now belongs to the defendant, and to award that sum to a plaintiff who has not established his right to it, and whose claim thereto has been denied by the trial justice in setting aside the verdict, as expressed in his rescript: "I am of the opinion, therefore, that the new testimony offered by the plaintiff for the purpose of showing that the middle stem of Exhibit A. is not the stem that was on the apparatus at the time of the accident, in connection with the testimony offered by him on that point on previous trials, fails to establish his case, and still leaves the weight of testimony on this point with the defendant. Motion for new trial will therefore be granted."

In *Nolan* v. *Rhode Island Co.*, decided January 12, 1910, and reported in 30 R. I. 246, this court unanimously determined as follows: "Moreover, when the verdict of a jury has been disapproved by the judge who presided at the trial, and a motion for a new trial has been granted by him on the ground that the verdict fails to administer substantial justice, such exercise of his power will not be disturbed by this court unless it clearly appears that such conclusion of the trial judge is erroneous." The decision now made is in direct contradiction of the foregoing decision rendered at the present term.

I can not consent thus to belittle and diminish the prerogative of this constitutional tribunal, even if such a renunciation is not wholly inconsistent with the very name of "The Supreme Court" therein conferred. Nor can I consent to the proposition that a constitutional tribunal unquestionably competent to declare, and charged forever, on occasion, with the grave and solemn duty of declaring, the action of the legislature itself as expressed in statutes affecting the property, the liberty, and even the life of every citizen of the State, though duly approved by the executive, to be unconstitutional and wholly null and void whenever and as often as a proper case for such action is presented, is so helplessly bound by the verdict of a petty jury that it can not even examine the record of the case to determine whether such verdict is supported by the evidence and is legally sustainable.

It is indisputable that it greatly concerns the State that there should be an end to litigation; but the supreme concern of the State in that respect is that justice should be done and that injustice should not be done.

As this court stands between the poor man and his oppressor, so it stands between the rich man and his despoiler, to do "equal right to the poor and to the rich." Whether the entry of judgment against the defendant in the sum of $22,895.00, and in favor of this plaintiff, upon a verdict not approved on its merits by this court, and after the trial justice has set the same aside and no error in his action in so doing is found, is or is not a deprivation of property without that "due process of law"

which is guaranteed by the constitution of the United States, is a question which must ultimately be determined elsewhere. It is sufficient for this occasion to say that I deem the action taken in the majority opinion as a voluntary renunciation of a duty imposed by the constitution of this State, of which duty not even the General Assembly is competent to relieve the court; and that upon careful examination of the record I am of the opinion that this verdict must be set aside, for the same reasons as heretofore given in the previous decisions of this court, and as are given by the trial justice in his rescript.

It is proper to observe that the first opinion setting aside the verdict in this case, reported in 26 R. I. 180, was rendered by the Appellate Division of the Supreme Court, then composed of Stiness, C. J., and Tillinghast and Douglas, JJ., every one of whom had ceased to be a member of the court before the verdict on the succeeding trial was set aside by the unanimous opinion of the court then composed of other judges than those who had previously considered the case. (See 29 R. I. 276.) Neither should it be overlooked that at the first trial the jury disagreed, and at the second trial the jury found specially, as set forth in the majority opinion, that the exhibit produced in court "includes the identical burner-valve and stem which were operated by the plaintiff at the time of the accident" and that the jury in the trial now under consideration have found specially the direct contrary of the finding of the jury at such second trial in respect of said exhibit. While these facts do not change the legal duty of the court at the present time, they are proper to be considered in determining the weight which should be given to the findings of successive juries in this case.

Seven new witnesses were produced by the plaintiff at this last trial, and it is in evidence that there were nearly two hundred workmen present at the time of the accident.

A new trial should be granted.

*John W. Hogan,* for plaintiff.

*Edwards & Angell, William A. Morgan,* for defendant.

*William A. Morgan, Seeber Edwards, Francis B. Keeney,* of counsel.